UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                            :

JOHN ABREU,                       :

                              :

             Plaintiff,   :             1:14-cv-6418-GHW

                              :

            -v -             :       MEMORANDUM OPINION

                              :         AND ORDER

DORA B. SCHRIRO, *Department of Corrections*  :
*Commissioner*; WARDEN AGRO, *Warden of A.M.K.C.*, :
and CITY OF NEW YORK                 :

                              :

              Defendants.  :

                              :
------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/1/2016

GREGORY H. WOODS, District Judge:

## I.    INTRODUCTION

Plaintiff John Abreu, proceeding *pro se*, is a former pretrial detainee who now brings various constitutional claims under 42 U.S.C. § 1983 against the City of New York ("the City"), former Department of Correction Commissioner Dora Schriro, and former Anna M. Kross Center ("A.M.K.C.") Warden Rose Agro. The crux of Mr. Abreu's complaint alleges that, while housed at A.M.K.C., he suffered increased sciatica-related back pain from sleeping on an uncomfortable mattress, which was in turn compounded by several instances of facility-wide lockdowns. Broadly construing the complaint, Plaintiff brings claims for constitutionally inadequate medical care and conditions of confinement.

Because the complaint fails to plausibly allege that Defendants acted with the requisite state of mind to state a claim for deliberate indifference, and fails to adequately allege that Defendants acted with punitive intent in creating the challenged conditions of confinement—and for the further reasons outlined below—Defendants' motion to dismiss is GRANTED.

## II.    BACKGROUND

At the time that Mr. Abreu brought this action, he was a pretrial detainee being held at A.M.K.C., though he has since been released from custody.  Second Amended Complaint ("AC") at 8; Pl.'s Sept. 11, 2016 Notice of Change of Address, Dkt. No. 42; Pl.'s Mar. 11, 2016 Notice of Change of Address, Dkt. No. 52.  Mr. Abreu alleges that he was diagnosed with sciatica upon arriving at A.M.K.C., causing him sciatic nerve pain that travels from his lower back to his legs.  AC at 9, 12.  The condition worsened over time, to the point that Mr. Abreu had difficulty completing many daily activities without pain.  *Id.* at 9–10, 12.  Mr. Abreu attributes the increased pain to sleeping on the facility's uncomfortable mattresses, Bob Barker Company ("BBC") mats, which he asserts are "fire resistive mats [designed] to meet fire safety standards," but "not made to be slept on" according to a "tag on the mat."  *Id.* at 8–10.  Mr. Abreu further alleges that his sciatica intensified because of facility-wide lockdowns at A.M.K.C.—which lasted between three to five days and were instituted in response to violence occurring in "another jail in Rikers Island"—during which he was effectively confined to his bed.  *Id.* at 10.

Mr. Abreu alleges that a sick-call doctor at A.M.K.C. told him that sleeping on the BBC mat worsened his back pain.  *Id.* at 9.  In order to alleviate the pain, Mr. Abreu alleges that he requested a double mattress from Warden Agro on one occasion while outside of the law library, explaining to her that his "lower back pain derived from the BBC mat."  *Id.* at 10.  Warden Agro denied the request because double mattresses were not permitted and "jail is not meant to be comfortable."  *Id.* Mr. Abreu alleges that A.M.K.C. does not allow inmates to obtain a double mattress even when prescribed by a doctor, although the complaint does not allege that Mr. Abreu received such a prescription or order from a doctor.  *Id.* at 9.  Mr. Abreu acknowledges that he received other treatment from doctors while in custody to treat his back pain, including pain medication, x-rays, and physical therapy exercises.  *Id.* at 12.

Mr. Abreu seeks four forms of relief:  (1) compensatory damages from the City for the increased sciatic pain he experienced; (2) an injunction ordering the City and the DOC to provide new mattresses and to recall existing DOC mattresses; (3) punitive damages from Commissioner Schriro for "not obviating DOC from using the BBC mats" and for allowing A.M.K.C. to refuse the use of double mattresses; and (4) punitive damages from Warden Agro for ordering facility-wide lockdowns.  *Id.*

Mr. Abreu first filed his complaint on August 8, 2014, Dkt. No. 1, and has since filed two amended complaints, Dkt. Nos. 7, 36.  Defendants filed a motion to dismiss the second amended complaint, Dkt. No. 44, but Mr. Abreu failed to timely oppose or respond to the motion—despite the Court *sua sponte* granting him a thirty-day extension of time to do so, Dkt. Nos. 48, 49.  Mr. Abreu has yet to file a response as of the date of this order, and thus the Court decides the motion without his input.

### III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks and citation omitted).  The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678.  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that,

if accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).  To meet this plausibility standard, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.*

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and "interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (internal quotation marks and citation omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . .") (internal quotation marks and citation omitted).  "This guidance applies with particular force when a plaintiff's civil rights are at issue." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## IV.   ANALYSIS

### A.  Section 1983 Standard

To prevail on a claim brought under 42 U.S.C. § 1983, Plaintiff must show that Defendants "acted under color of state law and that [they] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  Liberally construed, Plaintiff raises constitutional claims under the Fourteenth Amendment, alleging that Defendants were deliberately indifferent to his medical needs and subjected him to inadequate conditions of confinement.[1]  The Court addresses Defendants' arguments to dismiss each of the claims in turn.

---

[1] A prisoner challenging his conditions of confinement or officials' indifference to his medical needs must prove that the conditions constituted "cruel and unusual punishment" within the meaning of the Eighth Amendment.  Because the Eighth Amendment's protections do not extend to pretrial detainees, who may not

### B.  Inadequate Medical Care

Plaintiff first claims that he received inadequate medical care to treat his sciatica because

Defendants refused to provide a double mattress or alternative mattress to the BBC mats.  "In order

to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must

prove 'deliberate indifference to his serious medical needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702

(2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  This standard has an objective

prong and a subjective prong:  "First, the alleged deprivation must be, in objective terms, sufficiently

serious. . . . Second, the defendant must act with a sufficiently culpable state of mind."  *Id.* (internal

quotation marks and citation omitted).

### 1.  Objective Prong

"Determining whether a deprivation is an objectively serious deprivation entails two

inquiries."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  First, the Court must consider

"whether the prisoner was actually deprived of adequate medical care."  *Id.*  Under the first inquiry,

"adequate medical care is 'reasonable care' such that 'prison officials who act reasonably cannot be

found liable.'"  *Martinez v. Aycock-West*, No. 12-cv-4574 (KMK), 2016 WL 407294, at *5 (S.D.N.Y.

Feb. 1, 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 845, (1994)).

Second, the Court must consider "whether the inadequacy in medical care is sufficiently

serious."  *Salahuddin*, 467 F.3d at 280.  The second inquiry requires the Court "to examine how the

offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause

the prisoner."  *Id.*  "[G]iven the fact-specific nature of Eighth Amendment denial of medical care

claims, it is difficult to formulate a precise standard of 'seriousness' that is adequately sensitive (in

---

be "punished" prior to a conviction, a plaintiff must bring his claims under the Fourteenth Amendment.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) ("[A] person detained prior to conviction receives protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment if held in state custody.").  In the Second Circuit, courts analyze both of these claims "under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."  *Id.* at 72.

the sense of capturing those medical conditions properly within the realm of Eighth Amendment concern) yet appropriately specific[.]"  *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003) (internal quotation marks, citation, and ellipses omitted).  Thus, "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

Nonetheless, courts consider several factors in evaluating the seriousness of a medical condition, including:  "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'"  *Id.* (quoting *Chance*, 143 F.3d at 702).  "In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower," *Salahuddin*, 467 F.3d at 280, "and the focus is on the alleged inadequate treatment, not the underlying condition alone," *Sepolveda v. Armor Corr. Health Serv., Inc.*, No. 15-cv-4415 (SJF) (GRB), 2016 WL 1435677, at *4 (E.D.N.Y. Apr. 11, 2016) (internal quotation marks and citation omitted).

Here, Plaintiff alleges that he received medical treatment—including x-rays, pain medication, and physical therapy exercises—but contends the treatment was inadequate because he did not receive a double mattress or alternative type of mattress to alleviate his pain.  Given that Plaintiff is proceeding *pro se* and the highly fact-specific nature of the inquiry, the Court assumes—without holding—that the complaint's allegations satisfy the objective prong for purposes of this motion.  Thus, the Court turns to the subjective prong.

### 2.  Subjective Prong

"In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health."  *Salahuddin*, 467

F.3d at 280 (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)).  "Deliberate indifference is a mental

state equivalent to subjective recklessness," and "requires that the charged official act or fail to act

while actually aware of a substantial risk that serious inmate harm will result."  *Nielsen v. Rabin*, 746

F.3d 58, 63 (2d Cir. 2014) (quoting *Salahuddin*, 467 F.3d at 280).  Thus, in order to state a claim for

deliberate indifference to his serious medical needs, a plaintiff must allege that the defendant "knew

of and disregarded an excessive risk to [plaintiff's] health or safety and that she was both aware of

facts from which the inference could be drawn that a substantial risk of serious harm existed, and

also drew the inference."  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (quoting *Farmer*, 511

U.S. at 837) (internal quotation marks, brackets, and ellipses omitted).

Plaintiff fails to allege facts sufficient to plausibly infer that Defendants were aware of a

substantial risk that would result from the failure to provide Plaintiff with a different or double

mattress.  For example, Plaintiff states that he requested a double mattress from Warden Agro

because the BBC mats caused him back pain, but fails to allege that Warden Agro was aware of his

medical condition—that Plaintiff was diagnosed with sciatica; or that continuing to use the BBC mat

posed a substantial risk of seriously exacerbating the condition—as opposed to simply being

uncomfortable for Plaintiff.  Similarly, Plaintiff asserts that the BBC mats are "not made to be slept

on," but fails to allege that Defendants were aware of a substantial risk of *serious* harm from their

use.  And, although Plaintiff contends that Commissioner Schriro and Warden Agro ignored

doctors' orders for double mattresses, Plaintiff fails to allege that *he* received a doctor's order or that

Defendants' were made aware of any such order.[2]

---

[2] Even assuming that Plaintiff received a doctor's order for a double mattress and made Defendants aware of
the order, that, standing alone, may be insufficient to establish a culpable state of mind.  *See Santiago v. Ponte*,
No. 14-cv-6473 (PAE) (JCF), 2016 WL 680823, at *3 (S.D.N.Y. Feb. 18, 2016) (report and recommendation)
(medical permit stating "[p]lease allow patient double mattress/pillow for medical reason" and providing "no
details as to the nature or seriousness" of the inmate's injury was, without more, insufficient to establish a
culpable state of mind for deliberate indifference.).

Thus, even liberally construing the complaint and accepting the facts alleged as true, as the Court must, the complaint fails to satisfy the subjective prong.

### C. Conditions of Confinement

Plaintiff also claims that the three-to-five-day lockdowns of A.M.K.C. and the facility's use of BBC mats amounted to unconstitutional conditions of confinement.  "In a pretrial detainee's challenge to conditions of confinement under the Fourteenth Amendment, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'"  *Patterson v. City of New York*, No. 11-cv-7976 (DLC), 2012 WL 3264354, at *5 (S.D.N.Y. Aug. 9, 2012) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  "If the conditions do not amount to 'punishment,' allegations that defendants have denied plaintiff access to basic human needs are evaluated under a standard of 'deliberate indifference.'"  *Milo v. City of New York*, 59 F. Supp. 3d 513, 524 (E.D.N.Y. 2014) (citation omitted). The Court addresses each inquiry in turn.

#### 1.  Punitive Conditions

Liberally construing the complaint, Plaintiff alleges that:  (1) the lockdowns were punitive or arbitrary because they were instituted in response to violence occurring elsewhere on Rikers Island; and (2) providing prisoners with BBC mats was punitive because they were not designed to be slept on.  "A pre-trial detainee's 'liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty.'"  *Williams v. Ramos*, No. 13-cv-826 (VB), 2013 WL 7017674, at *3 (S.D.N.Y. Dec. 23, 2013) (quoting *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001)).  Notwithstanding, "because pretrial detainees have not been convicted of any crime, the Due Process Clause 'forbids subjecting them to punitive restrictions or conditions' of confinement."  *Hunter v. City of New York*, No. 10-cv-3532 (RA), 2015 WL 5697218, at *8 (S.D.N.Y. Sept. 28, 2015) (alterations omitted) (quoting *Turkmen v. Hasty*, 789 F.3d 218, 237 (2d Cir. 2015)).

In order to state a claim, Plaintiff "must plausibly plead that Defendants, (1) with punitive intent, (2) personally engaged in conduct that caused the challenged conditions of confinement." *Turkmen*, 789 F.3d at 237–38.  "Absent 'an expressed intent to punish,'" the Court "may only infer that Defendants acted with punitive intent if the challenged conditions were 'not reasonably related to a legitimate goal—if they were arbitrary or purposeless[.]'" *Id.* at 238 (alterations omitted) (quoting *Bell*, 441 U.S. at 538–39).

Plaintiff fails to plausibly allege that Defendants acted with punitive intent in instituting the lockdowns.  The complaint concedes that the lockdowns did not target Plaintiff, but rather affected all inmates in the housing unit.  *See Ramos*, 2013 WL 7017674, at *3 (finding that because entire housing unit was locked down, "the Court cannot infer defendants intended to single plaintiff out for punishment").  Moreover, the complaint further concedes that the lockdowns were connected to an alternative purpose—specifically, that they were instituted in response to "violent act[s] that occurred at another jail in Rikers Island."  AC at 10.

Although Plaintiff disagrees with the necessity of instituting those lockdowns, prison security is an "essential goal[ ]," and prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Bell*, 441 U.S. at 546–47 (1979); *see also McLeod v. Scully*, No. 81-cv-3139 (RLC), 1984 WL 692, at *3 (S.D.N.Y. July 30, 1984) ("[I]t is well-established that prison officials have a reasonable amount of discretion to respond to emergency situations[.]") (citations omitted).  Without more, the complaint fails to plausibly suggest that the decisions to lockdown A.M.K.C. were "arbitrary" or "purposeless."  *See Huggins v. Schriro*, No. 14-cv-6468 (GBD) (JLC), 2015 WL 7345750, at *8 n.9 (S.D.N.Y. Nov. 19, 2015) ("[T]he Court must grant wide deference to a prison administrator's determination that an incident in one area of

the jail necessitates lockdown measures be taken in another area as well."), *report and recommendation*

*adopted*, No. 14-cv-06468 (GBD) (JLC), 2016 WL 680822, at \*1 (S.D.N.Y. Feb. 18, 2016).[3]

Similarly, Plaintiff fails to plausibly allege that Defendants acted with punitive intent in

providing prisoners with BBC mats. The complaint alleges that all inmates at A.M.K.C. were given

BBC mats, and therefore Plaintiff does not contend that he was singled out for punishment.

Moreover, the complaint concedes that the BBC mats were "fire resistive" and designed "to meet

fire safety standards," and thus acknowledges that their use is connected to an alternative purpose.

*See* AC at 8. Although Plaintiff implicitly contends that fire-resistive mattresses are unnecessary

because A.M.K.C. is "a non-smoking institution," *id.*, fire safety is a legitimate goal and prison

administrators are accorded deference in their implementation of such policies. *See Garcia v. Fischer*,

No. 13-cv-8196 (VB), 2016 WL 297729, at \*5 (S.D.N.Y. Jan. 22, 2016) (Prisons are required "to

implement fire safety protections that do not expose prisoners to an unreasonable risk of serious

damage to their future health.") (internal quotation marks, citation, and brackets omitted); *see also*

*Petrucelli v. Hasty*, 605 F. Supp. 2d 410, 429 (E.D.N.Y. 2009) ("Prison regulations give the prison

officials the discretion . . . to restrict for reasons of security, fire safety, or housekeeping, the amount

of personal property that an inmate may retain while in administration.").

Accordingly, the complaint fails to plausibly allege that the lockdowns or use of BBC mats

were punitive. The Court therefore analyzes whether the alleged conditions of confinement

plausibly amounted to deliberate indifference.

---

[3] To the extent that the complaint can be read to challenge the duration of the lockdowns, Plaintiff fails to plausibly allege that the three-to-five-day lockdowns were excessive in relation to the interest of maintaining prison security. *See Ramos*, 2013 WL 7017674, at \*3 (pretrial detainee failed to state a claim where five-day lockdown of housing unit was not "excessive in light of the strong governmental interest in maintaining order in prisons").

### 2.  Deliberate Indifference

To state a claim for deliberate indifference based on conditions of confinement, "an inmate must allege that:  (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety.'"  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)) (ellipses omitted).

### a.  Objective Prong

To satisfy the objective prong, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Id.* (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) and *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam)).  "There is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency."  *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)) (internal quotation marks and brackets omitted).  "[P]rison officials violate the Constitution when they deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions."  *Id.* (citation omitted).  "Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise."  *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff alleges that being forced to sleep on a single BBC mat and being effectively confined to his bed during lockdowns posed an unreasonable risk of serious damage to his health, given that he suffers from sciatica.  The Court assumes, without holding, that Plaintiff's allegations satisfy the objective prong for purposes of this motion.  *Cf. id.* at 126–27 ("conditions that prevent

11

sleep" may violate the Eighth Amendment because "sleep is critical to human existence").  Thus, the

Court turns to the subjective prong.

### b.  Subjective Prong

"To meet the subjective element, the plaintiff must show that the defendant acted with

'more than mere negligence.'"  *Id.* at 125 (quoting *Farmer*, 511 U.S. at 835 (1994)).  As noted above,

"[t]o constitute deliberate indifference, the prison official must know of, and disregard, an excessive

risk to inmate health or safety."  *Id.* (quoting *Jabbar*, 683 F.3d at 57) (internal quotation marks and

brackets omitted).

Plaintiff fails to satisfy the subjective prong.  For similar reasons to those described above

regarding the alleged inadequate medical care, Plaintiff does not allege facts sufficient to plausibly

infer that Defendants were aware of an excessive risk to Plaintiff's health from the prolonged use of

a BBC mat.  *See Rodriguez v. City of New York*, No. 14-cv-5172 (WFK), 2014 WL 4629034, at *1, 3

(E.D.N.Y. Sept. 12, 2014) (dismissing conditions of confinement claim alleging that "mattresses

from the Bob Barker Company . . . caused [the plaintiff] to suffer back pain" where complaint failed

to plausibly allege that defendants were "deliberately indifferent to his serious medical or safety

needs"); *see also Corley v. City of New York*, No. 14-cv-3202 (GHW), 2015 WL 5729985, at *11

(S.D.N.Y. Sept. 30, 2015) ("With reference to Defendants' state of mind, [the plaintiff] has not

alleged that Defendants submitted him to the lock-out practices knowing that the practices posed an

excessive risk to his health or safety.").

### D.  Supervisory Liability

"It is well settled that, in order to establish a defendant's individual liability in a suit brought

under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged

constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  A

supervisor's personal involvement may be shown by evidence that she:  (1) "participated directly in

the alleged constitutional violation;" (2) "failed to remedy the wrong" after being informed of the violation through a report or appeal; (3) "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;" (4) "was grossly negligent in supervising subordinates who committed the wrongful acts;" or (5) "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). "[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (citing *Iqbal*, 556 U.S. 662).

Plaintiff does not allege any personal involvement by Defendant Schriro, and thus fails to state a claim for supervisory liability under Section 1983. There are no factual allegations that fulfill any of the five *Colon* standards. *See Greene v. City of New York*, No. 14-cv-3896 (PAE), 2015 WL 1381620, at *3 (S.D.N.Y. Mar. 25, 2015) (allegation that Mayor and Commissioner "decided to purchase cheaper and cost effective bedding without regard for prisoner health" was insufficient to support a plausible inference of personal involvement in alleged violations) (internal quotation marks omitted). Moreover, for the reasons already discussed, Plaintiff has failed to establish any underlying constitutional violation, and therefore any claims for supervisory liability must also be dismissed on that basis. *See Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("[B]ecause Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability.").

### E. *Monell* Liability

To hold a municipality liable under Section 1983, a plaintiff must plead facts supporting a plausible inference that the constitutional violation they suffered was caused by a municipal policy or custom. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). To state a claim against the City of

New York, a plaintiff must both "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" and "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403–04 (1997). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 691).

For the reasons already addressed, Plaintiff fails to plausibly allege a constitutional violation. "It is well established that a *Monell* claim cannot lie in the absence of an underlying constitutional violation." *Deraffele v. City of New Rochelle*, No. 15-cv-282 (KMK), 2016 WL 1274590, at *17 (S.D.N.Y. Mar. 30, 2016) (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)). Thus, even assuming that the complaint sufficiently alleges a policy or custom of regarding the use of BBC mats or failure to provide double mattresses, the *Monell* claim must be dismissed for failure to adequately plead an underlying constitutional violation.

### F. Exhaustion

Defendants separately contend that the complaint must be dismissed for failure to exhaust administrative remedies. The Prison Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a).

"[F]ailure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Nevertheless, a complaint may be dismissed where, "on the face of the [c]omplaint, it is clear that [a] plaintiff did not exhaust [administrative] remedies." *Williams v. Dep't of Corr.*, No. 11-cv-1515 (SAS), 2011 WL 3962596, at *5 (S.D.N.Y. Sept. 7, 2011). Under the PLRA, "the

exhaustion requirement hinges on the 'availability' of administrative remedies," and thus

"[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

Defendants contend that, on the face of the complaint, Plaintiff concedes that he failed to exhaust administrative remedies. The complaint states that Plaintiff did not file a grievance regarding lockdowns, but alleges that "lockdowns are not grievable." AC at 4. The complaint also alleges that Plaintiff filed a grievance regarding the BBC mats, but he "later discovered by the Grievance Officer that the [issue] is not grievable." *Id.* at 9.

Because the complaint fails to plausibly allege a claim, the Court need not resolve whether administrative remedies were available. That said, the Court observes that courts in this district have declined to resolve the question on a motion to dismiss. *See, e.g.*, *Henning v. N.Y.C. Dep't of Correction*, No. 14-cv-9798 (JPO), 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016) ("[B]ecause Plaintiff's papers suggest that nonexhaustion in this matter could be excused as unavailable, Defendants' motion to dismiss for failure to exhaust is denied.").

### G.  Leave to Amend

"A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks, citation, and brackets omitted). Despite the fact that Plaintiff has amended his complaint twice, the Court is mindful that "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen*, 746 F.3d at 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). Thus, the Court grants Plaintiff an additional opportunity to amend the complaint.

Plaintiff must file any amended complaint no later than thirty days from the date of this order.  If no amended complaint is timely filed, the Court shall direct the Clerk of Court to enter judgment for Defendants and to close this case.

## V.   CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 44.  Plaintiff is granted leave to file an amended complaint, as set forth above, no later than thirty days from the date of this order.

SO ORDERED.

Dated:  July 1, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge